**United States District Court**
For the Northern District of California

1
2
3
4
5                     UNITED STATES DISTRICT COURT
6                    NORTHERN DISTRICT OF CALIFORNIA
7
8   DIRECTV, INC.., a California corporation,        No. C-03-5247 EMC
9            Plaintiff,
10      v.                                           **REPORT AND RECOMMENDATION
                                                     RE PLAINTIFF'S MOTION FOR
11  MICHAEL CARPENTER,                               DEFAULT JUDGMENT
                                                     (Docket No. 32)**
12           Defendant.
13  _____/
14
15
16          On December 3, 2004, Plaintiff DirecTV, Inc. ("DirecTV") moved for default judgment

17  against Defendant Michael Carpenter.  Because Mr. Carpenter has not consented to a magistrate

18  judge, this matter will be reassigned to a district judge with the following report and

19  recommendation.

20                  **I.    FACTUAL & PROCEDURAL BACKGROUND**

21          On November 24, 2003, DirecTV filed a complaint against Mr. Carpenter for violation of the

22  Federal Communications Act of 1934, *see* 47 U.S.C. § 605; the Electronic Communications Privacy

23  Act, *see* 18 U.S.C. §§ 2510-2521 (commonly referred to as the Wiretapping Act); and California

24  common law.  In its complaint, DirecTV alleged as follows:  DirecTV is a direct broadcast satellite

25  provider.  *See* Compl. ¶ 1.  Based on writs of seizure that were executed on various companies,

26  DirecTV learned that Mr. Carpenter had purchased four "Pirate Access Devices," which are

27  designed for the unauthorized interception of DirecTV's satellite programming.  *See id.* ¶¶ 3, 4, 14

28  (alleging that Mr. Carpenter purchased an "Unlooper," a "Netsignia 210 Programmer," a "Loader,"

United States District Court

For the Northern District of California

1  and a "Wafer Bootloader").  The complaint sought, *inter alia*, injunctive relief, statutory damages

2  and/or compensatory and punitive damages, and reasonable attorneys' fees and costs.

3      DirecTV served the summons and complaint on Mr. Carpenter on March 21, 2004.  *See*

4  Declaration of Kimberly Colombo ¶ 3 & Ex. B.  Because Mr. Carpenter failed to respond, the Clerk

5  of this Court, upon DirecTV's request, entered Mr. Carpenter's default on July 23, 2004.  *See id.* ¶ 4

6  & Ex. C.  "The general rule of law is that upon default the factual allegations of the complaint,

7  except those relating to the amount of damages, will be taken as true."  *Televideo Sys., Inc. v.*

8  *Heidenthal,* 826 F.2d 915, 917-18 (9th Cir.1987) (internal quotation marks omitted).

9      On December 3, 2004, DirecTV filed this motion for default judgment against Mr.

10  Carpenter.  Although, in its complaint, DirecTV alleged, *inter alia*, violations of 18 U.S.C. § 2520,

11  47 U.S.C. § 605(e)(4), and 47 U.S.C. § 605(a), its motion for default judgment sought relief based

12  on §§ 2520 and 605(e)(4) only.  The Court shall therefore limit its consideration of the request for

13  default judgment to these two statutes.

14                    **II.   DISCUSSION**

15  A.    Legal Standard

16      Under Federal Rule of Civil Procedure 55, a court may not enter a default judgment against

17  an unrepresented minor, an incompetent person, or a person in military service.  *See* Fed. R. Civ. P.

18  55(b)(2).  Mr. Carpenter is not any of the aforementioned persons, *see* Colombo Decl. ¶ 8 & Ex. D,

19  so the Court may proceed with its analysis.

20      The disposition of a motion for default judgment lies within the discretion of the court.  *See*

21  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("The district court's decision whether to

22  enter a default judgment is a discretionary one.").

23              Factors which may be considered by courts in exercising
                discretion as to the entry of a default judgment include: (1) the
24              possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
                substantive claim, (3) the sufficiency of the complaint, (4) the sum of
25              money at stake in the action; (5) the possibility of a dispute concerning
                material facts; (6) whether the default was due to excusable neglect,
26              and (7) the strong policy underlying the Federal Rules of Civil
                Procedure favoring decisions on the merits.

27

28  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**United States District Court**
For the Northern District of California

B.      18 U.S.C. § 2520

Section 2520(a), which is part of the Wiretapping Act, provides in relevant part as follows: "Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).  In another DirecTV case similar to the instant case, Judge Ware concluded that the Wiretapping Act applies to the piracy of satellite television based on the Ninth Circuit authority *United States v. Lande*, 968 F.2d 907 (9th Cir. 1992).  *See DirecTV, Inc. v. Hua*, No. C-03-5353 (Docket No. 28).  The Court agrees with Judge Ware that *Lande* is controlling and so concludes that DirecTV may seek relief here pursuant to the statute.

As noted above, upon entry of default, all allegations in a complaint, except for those relating to damages, are taken as true.  Because default has been entered against Mr. Carpenter, the Court takes as true the allegation that Mr. Carpenter purchased four Pirate Access Devices and "intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept" DirecTV's satellite signal.  Compl. ¶ 23.  DirecTV has, therefore, established a valid claim under § 2520(a), a fact which weighs in favor of default judgment.

Consideration of the other *Eitel* factors also supports the Court's conclusion that default judgment is warranted.  For example, there is a significant possibility of prejudice to DirecTV if default judgment is not granted since it will be without remedy.  *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  In addition, because Mr. Carpenter has not filed an answer to the complaint, there is little to suggest that there is a possibility of a dispute concerning material facts, and there is no evidence suggesting that the failure to respond to the complaint was the result of excusable neglect.  The Court acknowledges that "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, and that the monetary damages sought by DirecTV are not insubstantial.  *See Pepsico*, 238 F. Supp. 2d at 1176 (stating "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"); *see also Bd. of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-

3

**United States District Court**
For the Northern District of California

1   00-0395 VRW, 2000 U.S. Dist. LEXIS 19065 (N.D. Cal. Dec. 29, 2000) (holding that default

2   judgment is favored where "[t]he amount at stake is minor in comparison to the potential loss . . . as

3   a result of defendants' conduct.").  However, on balance, the Court concludes that the *Eitel* factors

4   weigh in favor of awarding default judgment.

5         Having concluded that a default judgment is warranted in the instant case, the Court now

6   turns to the issue of damages.  Damages for violations of § 2520(a) are provided for by § 2520(c)(2),

7   which states that a court

8         may assess as damages whichever is the greater of --

9         (A)   the sum of the actual damages suffered by the plaintiff and any
              profits made by the violator as a result of the violation; or

10

11        (B)   statutory damages as whichever is the greater of $100 a day for
              each day of violation or $10,000.

12   18 U.S.C. § 2520(c)(2); *see also Dorris v. Absher*, 179 F.3d 420, 430 (6th Cir. 1999) (discussing

13   application of § 2520(c)(2)).  In the instant case, DirecTV is limited to statutory damages in the

14   amount of $10,000 as that was the only relief sought in its complaint in the event of a default.[1]  *See*

15   Compl. at 10; *see also* Fed. R. Civ. P. 54 (c) (noting that "[a] judgment by default shall not be

16   different in kind or exceed in amount that prayed for in the [complaint]").  Once a court "elects to

17   award damages under Section 2520, [it] is strictly curtailed regarding the amount of damages. . . .

18   [I]f the Court determines that damages are appropriate, the Court cannot award less than $ 10,000

19

20

---

21         [1] In its complaint, DirecTV actually sought $10,000 per device.  This Court rejects this per
22   device calculation and, instead, agrees with those courts that have awarded $10,000 as a single sum.
      *See Dorris*, 179 F.3d at 428 (finding that $10,000 is designed to compensate a plaintiff for all of the
23   transgressor's misdeeds under the wiretapping statute arising out of a closely related course of conduct
      that takes place over a relatively short period of time); *DirecTV, Inc. v. Hua*, No. C-03-5353 (Docket
24   No. 28) (awarding a single sum of $10,000 despite defendant's purchase of seven devices).

25         Instances where courts have multiplied the $10,000 figure involve the interception of
      conversations where the interception and subsequent disclosure of content to third parties are deemed
26   separate violations under § 2520.  These cases are not applicable to the multiple devices owned by one
      individual in one course of conduct where there is no clear discrete and divisible injury per device as
27   in the instant case. *See Romano v. Terdik*, 939 F. Supp. 144, 150 (D. Conn. 1996) (holding that $10,000
      may be awarded for interception of the conversation and $10,000 for disclosure of conversation to third
28   parties); *Biton v. Menda*, 812 F. Supp. 283, 285 (D. P.R. 1993) (awarding $10,000 for illegal recording
      of conversation and $10,000 for its disclosure).

**United States District Court**
For the Northern District of California

1   regardless of how trivial the transgression might be." *DirecTV, Inc. v. Decroce*, 332 F. Supp. 2d.

2   715, 721 (D. N.J. 2004).

3        The question is whether courts have discretion to refuse to award any damages at all.

4   Several courts have concluded that courts have such discretion under § 2520(c)(2) largely based on

5   the use of the word "may" in the statute.  *See, e.g.*, *DirecTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th

6   Cir. 2004) (agreeing with the Fourth, Sixth, and Eight Circuits that the use of "may" in the statute

7   means that an award of damages under section 2520(c)(2) is discretionary); *Dorris*, 179 F.3d at 429

8   (concluding that the plain language of the statute shows that district courts have the discretion to

9   decline the imposition of damages); *Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir. 1996) (affirming

10  the district court's determination that damages under the wiretapping statute are discretionary, as

11  evidenced by use of the word "may"); *Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir. 1995) (holding

12  that the language change "from the mandatory to the permissive verb form indicates that Congress

13  intended to confer upon district courts the discretion to decline to award damages in applying §

14  2520(c)(2)").

15       On the other hand, in *Rodgers v. Wood*, 910 F.2d 444 (7th Cir. 1990), the Seventh Circuit

16  found no such discretion.  *See id.* at 448.  According to the Seventh Circuit, once a violation of the

17  statute was found, a court did not have the discretion to withhold an award of damages even if

18  "damages would be inappropriate."  *Id.*

19       The Court declines to follow *Rodgers* and finds the reasoning in the former cases more

20  persuasive.  The statute's use of "may" connotes a permissive rather than mandatory authority.

21  Moreover, the relative severity of the minimum damages that must be awarded if damages are

22  awarded at all ($10,000), some flexibility to consider relevant factors is warranted.  As described by

23  one court:

24              In exercising its discretion in deciding whether to award
            damages under 18 U.S.C. § 2520(c)(2), a district court should make an
25          individualized assessment of each defendant.  Factors that may be
            considered include whether the plaintiff suffered financial harm, the
26          extent to which a violation occurred and unlawfully intercepted signals
            were disclosed, whether the defendant had a legitimate reason for his
27          or her actions, whether the defendant profited from his or her acts, and
            whether an award of damages would serve a legitimate purpose.

28

5

United States District Court
For the Northern District of California

1    *DirecTV v. Guzzi*, 308 F. Supp. 2d 788, 790 (E.D. Mich. 2004).  Accordingly, this Court may, in its

2    discretion, refuse to award any damages under § 2520(c)(2), even if there has been a violation of §

3    2520(a).

4         In exercising this discretion, the Court concludes that damages are not appropriate.  DirecTV

5    has not offered any concrete evidence about the financial harm it has suffered as a result of Mr.

6    Carpenter's actions.  Although it provides information about the value of its services with respect to

7    high-end customers, there is no evidence demonstrating that Mr. Carpenter can be equated with a

8    high-end customer.  Similarly, DirecTV has not offered any evidence about the extent to which Mr.

9    Carpenter intercepted DirecTV's signals.  In addition, there is no indication that Mr. Carpenter

10   profited commercially from his interception of DirecTV's signals -- *i.e.*, there is no evidence of

11   commercial gain because of the interception.  While an award of damages serve a useful and

12   legitimate purpose of deterrence, the Court notes that that purpose is met in part by an award of

13   attorneys fees discussed below.

14        The Court further notes that DirecTV is not without other remedies.  Notably, it alleged in its

15   complaint but did not seek a default judgment under 47 U.S.C. § 605(a) which prescribes damages

16   but affords the Court substantial flexibility in assessing statutory damages.[2]  Under §

17   _____

18        [2]  Section 605(a) states in part as follows:

19        Except as authorized by chapter 119, Title 18, no person receiving,
          assisting in receiving, transmitting, or assisting in transmitting, any

20        interstate or foreign communication by wire or radio shall divulge or
          publish the existence, contents, substance, purport, effect, or meaning

21        thereof, except through authorized channels of transmission or reception,
          (1) to any person other than the addressee, his agent, or attorney, (2) to

22        a person employed or authorized to forward such communication to its
          destination, (3) to proper accounting or distributing officers of the

23        various communicating centers over which the communication may be
          passed, (4) to the master of a ship under whom he is serving, (5) in

24        response to a subpoena issued by a court of competent jurisdiction, or (6)
          on demand of other lawful authority.  No person not being authorized by

25        the sender shall intercept any radio communication and divulge or
          publish the existence, contents, substance, purport, effect, or meaning of

26        such intercepted communication to any person.  No person not being
          entitled thereto shall receive or assist in receiving any interstate or

27        foreign communication by radio and use such communication (or any
          information therein contained) for his own benefit or for the benefit of

28        another not entitled thereto.  No person having received any intercepted
          radio communication or having become acquainted with the contents,

United States District Court

For the Northern District of California

605(e)(3)(C)(i), the aggrieved party may recover for each violation of § 605(a) either: (1) actual damages suffered as a result of the violation and any profits made by the violator or (2) statutory damages of not less than $1,000 nor more than 10,000 for each violation of §605(a).[3]  Courts have substantial discretion in awarding actual and statutory damages pursuant to § 605(e)(3)(C)(i).  *See Kingvision Pay-Per-View, Ltd. v. Scott E's Pub., Inc.*, 146 F. Supp. 2d 955, 958-59 (E.D. Wis. 2001) (finding that a court has great discretion in awarding statutory damages under § 605.); *Decroce*, 332 F. Supp. 2d at 721 (finding that § 605(e)(3)(C) gives the court considerable latitude in awarding fair damages according to the specific facts of the case).[4]

---

substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. . . .

The Third Circuit has interpreted § 605(a) as prohibiting parties from pirating or intercepting satellite transmissions.  *See TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 200 (3d Cir. 2001).  In contrast to § 605(e)(4), which is intended to target only sellers and manufacturers of intercepting devices, § 605(a) targets both re-sellers and end users who intercept satellite signals illegally.  *See DirecTV, Inc. v. Mitchell*, No. 2:03CV386, 2004 U.S. Dist. LEXIS 22570, at *7, 14 (E.D. Va. Sept. 10, 2004); *see* 47 U.S. C. § 605(b) (defining "assisting," language used in § 605(a), to include the manufacture or sale of devices used to intercept or receive unauthorized signals).  In its complaint, DirecTV included allegations supporting a violation of § 605(a).  More specifically, DirecTV alleged that Mr. Carpenter purchased four Pirate Access Devices and that he received and assisted others in receiving DirecTVs satellite transmissions without authorization from DirecTV.  *See* Compl. ¶¶ 14, 19.

[3] The court can decrease the award of statutory damages to not less than $250 if the court "finds that the violator was not aware and had no reason to believe that his acts constituted a violation of [§ 605(a)]."  47 U.S.C. §605(e)(3)(C)(iii).  The court can also increase the award of statutory damages to not more than $100,000 if the court finds the violation to have been committed willfully and for direct or indirect commercial advantage or private financial gain.  *See id.* § 605(e)(3)(C)(ii).

[4] Factors that courts have considered in determining an appropriate amount of damages include: (1) whether the defendant profited as a result of his violation, *see DirecTV, Inc. v. Perrier*, No. 03-CV-400S, 2004 U.S. Dist. LEXIS 9258, at *11 (W.D.N.Y. Mar. 15, 2004) (noting that defendant did not profit "in any way from his misconduct beyond receiving Plaintiff's television programming free of charge"); (2) whether the plaintiff suffered financial loss because of the violation, *see DirecTV, Inc. v. Mitchell*, No. 2:03CV386, 2004 U.S. Dist. LEXIS 22570, at *1 (E.D. Va. Sept. 10, 2004); (3) the duration of the defendant's misconduct, *see id.*; (4) the reason for the defendant's misconduct, *see id.*; (4) whether the defendant reasonably believed that his or actions were legal, *see id.*; (5) whether the defendant was already punished in a different proceeding, *see id.*; (6) whether the defendant assisted or induced others in violating the statute, *see Perrier*, 2004 U.S. Dist. LEXIS 9258, at *11; (7) whether the defendant's violation was willful, *see Albright*, 2003 U.S. Dist. LEXIS 23811, at *8; (8) the deterrent value of the damage award, *see id.*; and (9) whether the damage award is comparable to awards in similar cases.  *See Perrier*, 2004 U.S. Dist. LEXIS 9258, at *11.

Although courts have taken a variety of approaches in coming up with an appropriate sum

for damages,[5] it is clear that the Court would have discretion to award damages less than $10,000 to

DirecTV under § 605(a).  Given the availability of a more flexible measure of damages, the Court

concludes that the all or nothing approach of § 2520 is not necessary to serve the purpose of the

legislation addressing Mr. Carpenter's conduct under the circumstances of this case.  By choosing to

forego § 605(a), DirecTV has assumed the risk that the Court might exercise its discretion not to

award $10,000 in statutory damages under § 2520.

Accordingly, the Court recommends that default judgment is appropriate with respect to §

2520(a) but that no damages should be awarded for a violation of that statute.

Even though the Court recommends that no damages be awarded for a violation of § 2520(a),

it recommends that DirecTV be awarded its reasonable attorney's fees.  *See* 18 U.S.C. § 2520(b)(3)

(providing that appropriate relief includes "a reasonable attorney's fee and other litigation costs

---

[5] Some courts have adopted DirectTV's plaintiff's estimate of actual damages or a portion thereof.  *See Mitchell*, 2004 U.S. Dist. LEXIS 22570, at *22-25 (awarding actual damages and recommending a portion thereof against defendant because the amount served a deterrent purpose and reflected an estimate of the actual loss DirecTV suffered).  Other courts have awarded both the minimum statutory figure of $1,000 in addition to actual damages.  *See DirecTV, Inc. v. Getchel*, No. 3:03CV2073, 2004 U.S. Dist. LEXIS 9678, at *8-9 (D. Conn. May 26, 2004) (declining to award the maximum statutory penalty of $10,000 because there was no evidence of the commercial use of the device and, instead, awarding DirecTV the minimum statutory amount of $1,000 plus an additional $3,800 reflecting DirecTV's lost revenues.  Yet other courts have awarded damages in the amount of $5,000 for each pirated device, finding $5,000 to be a fair amount between $250 and $10,000.  *See, e.g., DirecTV, Inc. v. Hanson*, No. 04-00390-JF, 2005 U.S. Dist. LEXIS 237, at *3 (E.D. Pa. Jan. 7, 2005) (concluding that there was no adequate basis for determining actual damages, how many satellite signals were pirated, and the number of statutory violations; therefore, holding that $5,000 was a fair amount between the minimum and maximum statutory award); *see also DirecTV v. Johnson*, No. 03-03286-JF 2005 U.S. Dist. LEXIS 235, at *3 (E.D. Pa. Jan. 7, 2005); *DirecTV v. Laux*, No. 03-04357-JF, 2005 U.S. Dist. LEXIS 236, at *3 (E.D. Pa. Jan. 7, 2005).

Most courts, however, have awarded only $1,000 for each pirated device.  *See, e.g., Perrier*, 2004 US Dist. LEXIS 9258, at *11 (awarding DirecTV the minimum statutory award multiplied by the number of violations because there was no indication that the defendant profited in any way from his misconduct beyond receiving television programming for free and there was no evidence that defendant induced others in committing similar violations); *DirecTV, Inc. v. Malizie*, No. 03-CV-403S 2004 U.S. Dist. LEXIS 18054, at *13 (W.D.N.Y Mar. 15, 2004) (awarding DirecTV $1,000 in statutory damages); *DirecTV, Inc. v. Kaas*, 294 F. Supp. 2d 1044, 1049 (N.D. Iowa 2003) (awarding $1,000 in statutory damages; also noting that the $10,000 amount was excessive and would bring financial ruin to persons of modest means); *Albright*, 2003 U.S. Dist. LEXIS 23811, at *8-10 (awarding $1,000 in damages because there was no evidence that the defendant acted willfully or sought to profit from use of the device); *Decroce*, 332 F. Supp. 2d at 715 (finding that $1,000 would compensate DirecTV for any loss suffered, punish defendant for any wrongdoing, and serve as an effective deterrent to defendant and the like).

United States District Court
For the Northern District of California

1  reasonably incurred"). DirecTV has submitted the declaration of its counsel Kimberly R. Colombo

2  to prove the fees it incurred. In her declaration, Ms. Colombo states that DirecTV's former counsel,

3  Danner & Martyn, incurred attorney's fees in the amount of $302.10. *See* Colombo Decl. ¶ 11. She

4  also states that the fees incurred for her law firm -- prior to the filing of the motion for default

5  judgment -- amounted to $101.60. *See id.* Finally, she states that her billing rate is $235 per hour

6  and that DirecTV has or will have incurred an additional $1,530 in fees during and after the filing of

7  the motion for default judgment. *See id.* ¶ 12. Thus, the total amount of attorney's fees comes to

8  $1,933.70 (*i.e.*, $302.10 + 101.60 + $1,530). The amount of time expended and the billing rate are

9  reasonable given the work performed. Therefore, the Court recommends that attorney's fees in the

10  amount of $1,933.70 be awarded.

11  C.       47 U.S.C. § 605(e)(4)

12       As noted above, in its motion for default judgment, DirecTV sought relief not only pursuant

13  to § 2520(a), but also pursuant to 47 U.S.C. § 605(e)(4). Section 605(e)(4) prohibits any person

14  from manufacturing, assembling, modifying, importing, exporting, selling, or distributing any device

15  or equipment that primarily assists in the unauthorized decryption of satellite cable programming or

16  direct-to-home satellite services. *See* 47 U.S.C. § 605(e)(4). The statute specifically provides that

17  "the prohibited activity . . . as it applies to each such device shall be deemed a separate violation."

18  *Id.* Any person aggrieved by a violation of § 605(e)(4) may bring a private civil action against the

19  violator and seek damages under § 605(e)(3)(C).[6] *See id.* § 605(e)(3)(C).

20       As stated above, upon entry of default, all factual allegations in the complaint are taken as

21  true, except for those relating to damages. In the instant case, DirecTV alleged in its complaint that:

22  (1) Mr. Carpenter purchased four Pirate Access Devices; (2) he programmed and reprogrammed

23  DirecTV Access Cards and designed electronic systems for use in surreptitiously obtaining DirecTV

24  Satellite Programming; and (3) he removed and inserted Pirate Access Devices and/or illegally

25  programmed Access Cards into DirecTV Receivers and, by doing so, unlawfully assembled and/or

26  modified devices to assist in the unauthorized decryption of Satellite Programming. *See* Compl. ¶¶

27  _____

28       [6] In its complaint, DirecTV stated that, in the event of a default, it sought only statutory damages
in the amount of $10,000 for each Private Access Device used and possessed. *See* Compl. at 10.

**United States District Court**
For the Northern District of California

14, 32.

Although the Court takes these allegations as true, it concludes that DirecTV has failed to state a claim for relief under § 605(e)(4).  Courts have held that § 605(e)(4) targets upstream manufacturers and distributors, not ultimate consumers of pirating devices, and the mere purchase and use of Pirate Access Devices does not constitute a violation of the statute.  The allegations of the complaint do not establish that Mr. Carpenter is an upstream manufacturer or distributor.  *See DirecTV, Inc. v. Albright*, No. 03-4603, 2003 U.S. Dist. LEXIS 23811, at *7 (E.D. Pa. Dec. 9, 2003); *DirecTV, Inc. v. McDougall*, No. SA-03-CA-1165-XR, 2004 U.S. Dist. LEXIS 23013, at *9 (W.D. Tex. Nov. 12, 2004); *see also DirecTV, Inc. v. Borich*, No. 1:03-2146, 2004 U.S. Dist. LEXIS 18899, at *8-9 (S.D. W. Va. Sept. 17, 2004) (concluding that the act of removing and inserting Pirate Access Devices and/or inserting illegally programmed Access Cards into valid DIRECTV Receivers is not the type of assembly or modification prohibited by the statute).

Accordingly, the Court recommends that default judgment is not appropriate pursuant to § 605(e)(4).  The second and third factors of the *Eitel* test, in particular, inform this recommendation.

### III.   CONCLUSION

For the foregoing reasons, the Court hereby recommends as follows:

(1)   That DirecTV's motion for default judgment be GRANTED with respect to § 2520(a) and that DirecTV be awarded attorney's fees totaling $1,933.70 but no statutory damages; and

(2)   That DirecTV's motion for default judgment be DENIED with respect to § 605(e)(4).

Any party may serve and file specific written objections with the district judge to whom this case is reassigned to this recommendation within ten (10) days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civ. L.R. 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.


Dated:  March 11, 2005

                              /s/
                         EDWARD M. CHEN
                         United States Magistrate Judge